**In the Matter of Baxter Arnold BURCH, Jr., Debtor.**

**Baxter Arnold BURCH, Jr., Plaintiff,**

v.

**Carol A. BURCH, Edward Leonard, Barry Isenburg and Larry K. Coleman, Defendants.**

**Bankruptcy No. 86–5851–8B1. Adv. No. 87–52.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 25, 1989.

586

Richard A. Zeller, St. Petersburg, Fla.,
for plaintiff.

Raymond C. Farfante, Jr., Tampa, Fla.,
for defendants.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

THOMAS E. BAYNES, Jr.,
Bankruptcy Judge.

THIS CAUSE came on to be heard upon the Plaintiff/Debtor's Complaint under Section 523(a)(5) to determine the dischargeability of certain debts owed to the Debtor's ex-wife, Defendant Carol A. Burch, her attorney, and her accountant as established by a Final Judgment of Dissolution of Marriage, as amended, entered by the Circuit Court of Manatee County, Florida. The parties have filed reciprocal motions for summary judgment, affidavits, and transcripts of hearings before the state court, one of which concerns a clarification of the final judgment. Notwithstanding the argument at the hearing on clarification, the state court denied clarification of its final judgment.

The Debtor admits the items of alimony and support challenged in paragraph 10 of his Complaint are nondischargeable under Section 523(a)(5) of the Bankruptcy Code. The only issue remaining therefore is whether the following obligations of the Debtor as set forth in paragraph 11 of the Complaint are dischargeable under Section 523(a)(5).

A. A transfer to the ex-wife of the marital home;

B. Reimbursement to the ex-wife of money paid to a Dr. Ritt;

C. A lump-sum alimony award of $220,-500.00 characterized by the state court as equitable distribution, payable by a $10,000 payment within 90 days of the final judgment of dissolution with the balance payable at $1,200 per month;

D. The securing and maintenance of life insurance in an amount to secure payment of the $220,500.00 equitable distribution, the ex-wife being named beneficiary;

E. That the Debtor hold his ex-wife harmless regarding the pending litigation concerning the solar hot water heater;

F. The ex-wife's expert witness fees;

G. The ex-wife's attorney's fees;

SCOPE OF INQUIRY UNDER 523(a)(5)

The scope of inquiry under Section 523(a)(5) requires a review of the bankruptcy court's role vis-a-vis a state court determination in a divorce case. This Court is guided by the Eleventh Circuit's decision in *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902 (11th Cir.1985). In that decision, the Eleventh Circuit states:

The language used by Congress in § 523(a)(5) requires bankruptcy courts to determine nothing more than whether the support label accurately reflects that the obligation at issue is 'acutally in the

nature of alimony, maintenance, or support.' The statutory language suggests a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the *nature* of support. The language does not suggest a precise inquiry into financial circumstances to determine precise levels of need or support; nor does the statutory language contemplate an ongoing assessment of need as circumstances change.

*Harrell*, at 906. The language partially rejects the concept established by the Sixth Circuit in *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983). In *Calhoun*, the Sixth Circuit held Section 525(a)(5) requires the bankruptcy court to inquire into the divorced parties' prospective needs, change in circumstances, and continual need for support. *See, Helm v. Helm (In re Helm)*, 48 B.R. 215 (Bankr.W. D.Ky.1985), aff'd on rehearing, 49 B.R. 573 (Bankr.W.D.Ky.1985).

 *Harrell* clearly indicates the bankruptcy court is empowered to characterize items in the nature of support which are not authorized as support under state law. It does not matter that the particular item to be determined in the nature of support could have been similarly characterized by the state court. This Court's inquiry is founded in federal bankruptcy law and not on state law. *See, Williams v. Williams (In re Williams)*, 703 F.2d 1055 (8th Cir. 1983); *Lovette v. Cox (Matter of Cox)*, 68 B.R. 307 (Bankr.M.D.Fla.1986); *Chambers v. Heverly (Matter of Heverly)*, 68 B.R. 21 (Bankr.M.D.Fla.1986); *Norton v. Norton (Matter of Norton)*, 65 B.R. 140 (Bankr.M. D.Fla.1986).

*Harrell*, however, does not establish a criteria to guide the bankruptcy judge in characterizing the obligation. Such criteria is necessary to prevent possible conflicting characterizations by individual judges. Precedent and stare decisis requires a court to insure that future litigants can determine what the courts will do for them or to them. K.N. Llewellyn, *The Bramble Bush on Our Law and Its Study*, 12

(1960); Holmes, *The Path of the Law*, 10 Harvard L.Rev. 457, 460, 461 (1897).

The purpose of the Bankruptcy Court's inquiry is to ascertain the intent of the divorce court, or in the case of a settlement agreement, the intent of the parties as to each particular obligation established therein without looking to the labels used by the court or the parties. *See, Heverly, supra; In re Usher*, 442 F.Supp. 866 (N.D. Ga.1977); *MacDonald v. MacDonald (In re MacDonald)*, 69 B.R. 259 (Bankr.N.J.1986); *Harke v. Harke (In re Harke)*, 24 B.R. 645 (Bankr.E.D.Mo.1982). Since the Bankruptcy Court's review is limited to characterizing support obligations within a framework of intent gleaned from the state court final judgment, the doctrine of collateral estoppel may be available.

### COLLATERAL ESTOPPEL

Utilization of the doctrine of collateral estoppel requires a two step analysis in accordance with the Supreme Court's decision in *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Chang v. Daniels (In re Daniels)*, 91 B.R. 981 (Bankr.M.D.Fla.1988). *See also, Shafer v. Wintrow (In re Wintrow)*, 57 B.R. 695 (Bankr.S.D.Oh.1986). In *Daniels*, this Court noted *Marrese's* requirement that state law give preclusive effect to the final judgment. The analysis: (a) Was the final judgment valid and final on the merits? (b) Was there an identity of issues in the prior litigation? (c) Was there an identity of the parties or privity between the parties in both the prior and present litigation? and (d) Was the issue sought to be precluded actually litigated and determined in the previous case? *Molldrem v. Wagner (Matter of Wagner)*, 79 B.R. 1016, 1020 (Bankr. W.D.Wis.1987). In the case at hand the answer to these questions is yes. *See, Pumo v. Pumo*, 405 So.2d 224 (Fla. 3rd DCA 1981).

The second part of the *Marrese* analysis determines whether Congress has intended the particular federal law to preempt the state court adjudication. *Daniels*, at 983; Title 28 U.S.C. § 1738. Clearly, the answer

is a qualified yes—bankruptcy law does preempt. As noted above, however, in domestic relations cases, the inquiry is limited to characterizing the obligations as support or property settlement and not to redetermining or relitigating the facts. *Harrell*, at 907. Within this limitation, the doctrine of collateral estoppel can be applied.

> Nevertheless, collateral estoppel may be used to preclude re-litigation of certain issues that were litigated in the state Court. Findings on those issues may be considered as evidence in the § 523 dischargeability proceeding ... To the extent that the findings of fact and conclusions of law in the state Court divorce judgment may be used as evidence in these adversary proceedings, the parties are precluded from relitigating those findings and conclusions.[1]

*Calisoff v. Calisoff (In re Calisoff)*, 92 B.R. 346, 350 (Bankr.N.D.Ill.1988). This Court will not follow the pre-*Marrese* holding in *Reed v. Reed (In re Reed)*, 31 B.R. 116 (Bankr.Conn.1983). Our position on the use of collateral estoppel is bolstered by *Rose v. Rose*, 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987).

> We have consistently recognized that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.' *In re Burrus*, 136 U.S. 586, 593–594, 10 S.Ct. 850, 852–853, 34 L.Ed. 500 (1890); see *Hisquierdo, [v. Hisquierdo]*, supra, 439 U.S. [572] at 581, 99 S.Ct. [802] at 808 [59 L.Ed.2d 1 (1971)]; *McCarty [v. McCarty]*, supra, 453 U.S. [210], at 220, 101 S.Ct. [2728], at 2735 [69 L.Ed.2d 589 (1981)]. 'On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be pre-empted.' *Hisquierdo, supra*, 439 U.S., at 581, 99 S.Ct., at 808, quoting *Wetmore v. Mar-*

*koe*, 196 U.S. 68, 77, 25 S.Ct. 172, 175, 49 L.Ed. 390 (1904). Before a state law governing domestic relations will be overriden, it 'must do 'major damage' to 'clear and substantial' federal interests.' *Hisquierdo, supra*, 439 U.S., at 581, 99 S.Ct., at 808, quoting *United States v. Yazell*, 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1966).

*Id.*, 481 U.S. at 625, 626, 107 S.Ct. at 2033, 2034, 95 L.Ed.2d at 607, 608.

In its search to find the intent of the state court, this Court cannot ignore that the state court was perceiving the evidence and made its decision in light of developed principles of Florida domestic relations law. However, there must be absolute harmony between the bankruptcy court's limited inquiry and the state court's previous determination in order for collateral estoppel to be applied without causing "major damage" to the federal interest. *Rose, supra*, 107 S.Ct. at 2033.

An important aspect of the doctrine of collateral estoppel is the shifting burdens of proof in a dischargeability action. Traditionally, a Court's mere statement that the party challenging the dischargeability of a debt has the burden of proof would suffice. *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577 (11th Cir.1986). The standard rubric for the burden of proof is insufficient in this Section 523(a)(5) case. First, the Debtor, not the non-debtor spouse, has brought this adversary proceeding. Second, the real inquiry is intent, not dischargeability. Dischargeability vel non is the legal conclusion arrived at after the bankruptcy court determines the state court's intent. The Debtor, as Plaintiff, has the burden of persuasion to establish a prima facie case of the state court's intent, at which point the burden shifts to the nondebtor spouse. *Financial Collection Agencies v. Norman (In re Norman)*, 25 B.R. 545 (Bankr.S.D.Cal.1982); see also, *Melichar v. Ost (In re Melichar)*, 7 B.R. 951 (D.Md.1980).

---

**1.** It should be noted that the doctrine of collateral estoppel or res judicata has been held to apply where a party seeks to relitigate the question of dischargeability under Section 523(a)(5) after a state court has already determined dischargeability under that Section. This case does not deal with such an issue. *See, Goss v. Goss*, 722 F.2d 599 (10th Cir.1983).

Equally as important is the degree of proof. The standard of proof in the state court litigation must be at least equal to the standard of proof required in the bankruptcy court proceedings, *Daniels, supra.* Generally, under Florida law, the level of proof required in civil cases must meet the preponderance of the evidence standard. *Allstate Insurance Co. v. Vanater,* 297 So.2d 293 (Fla.1974) The standard of proof required in adversary proceedings brought pursuant to 11 U.S.C. § 523(a)(5) is also by the preponderance of the evidence. *In re Shaw,* 66 B.R. 399 (Bankr.N.D.Oh.1986).

## DISCHARGEABILITY

In accepting the doctrine of collateral estoppel as applicable in this case and making the inquiry suggested by the Eleventh Circuit in *Harrell,* the state court's intent in making certain findings of fact must still be ascertained. In that regard, the Court looks to the factors suggested in *Hixson v. Hixson (Matter of Hixson),* 23 B.R. 492 (Bankr.S.D.Oh.1982); *see also, MacDonald, supra; Newman v. Newman (Matter of Newman),* 15 B.R. 67 (Bankr.M.D.Fla. 1981). In *Hixson,* the Court evaluated the substantive nature of the Debtor's obligations by considering the following factors:

1. The express terms of the separation agreement;

2. The relative incomes of the parties at the time the divorce decree was entered;

3. The length of the marriage;

4. The number and age of children;

5. The amount of child support;

6. Whether the obligation terminates on death or remarriage of the recipient or donor spouse;

7. Whether the obligation is payable in installments over a long period of time;

8. The education level of the parties;

9. The health of the parties;

10. The probable need for support;

11. The property brought to the marriage by either party;

12. Whether the payments are intended as economic security.

After a lengthy trial, the state court judge in Debtor's divorce action found the Plaintiff/Debtor was a forty-nine percent owner in a corporation, B & F Auto Parts, Inc. The Debtor had an irrevocable right to purchase the remaining fifty-one percent from his mother upon her death. The state court concluded the Debtor to be the sole owner of the corporation. The Court stated,

> For all intents and purposes, based on the conduct of all of the parties, this corporation is more like a sole proprietorship over which the Husband has virtual total control. The Husband also has available to him the entire assets of the corporation.

Final Judgment of November 25, 1986 at 1, *Burch v. Burch,* Circuit Court in and for Sarasota County, Florida. Case No. CA–85–199.

The auto parts business was considered a marital asset for equitable distribution purposes between the Debtor and his ex-spouse. *Canakaris v. Canakaris,* 382 So. 2d 1197 (Fla.1980). The business was determined to have an asset value of $700,-000. The accuracy of the corporate ledgers as to value was rejected. The state court also found 230 hours were necessarily expended by the wife's attorney in preparing the divorce case. The Court found,

> ... [T]here was a unique necessity to prove the true value of the business and the husband's interest in the business. Throughout the course of litigation the husband attempted to prove a facade concerning his actual control over the business and the value of the business. Wife's counsel ably overcame the facade, but not without substantial difficulty. The Court finds that the husband acted *on numerous occasions to hinder the wife's efforts to ascertain the value of those assets.* It would be unjust and unequitable for the wife to bear the entire burden of cost approving these matters.

Final Judgment Regarding Costs and Attorneys Fees of November 25, 1986 at 2; *Burch v. Burch,* Circuit Court in and for

Sarasota County, Florida, Case No. CA–85–199.

Further, the final judgment finds the marriage had survived twenty years and the Defendant/ex-wife was virtually the coequal business partner, substantially contributing to the business.

> ... [T]he wife was the primary homemaker, while the Husband contributed little, either to maintenance of the home or raising the children. The wife bore the very heavy burden of maintaining both the traditional role of housewife and the more modern role of business partner.

Final Judgment of November 25, 1986 at 2, *Burch v. Burch, supra.*

Several expert witnesses testified the Defendant/ex-wife's physical and mental condition thwarted rehabilitation.

> ... [S]he will be unable to be rehabilitated to the point that she could hope to obtain a standard of living anywhere close to that achieved during the marriage. The Wife has substantial debts with little hope fo [sic] obtaining the funds by which to pay them.

*Id.* at 2.

After reviewing the accounting records, tax returns and disregarding the corporate ledgers, the trial court determined the husband was intentionally dissipating some of the marital assets, although his standard of living had not diminished. The husband spent the sale proceeds of the Cadillac automobile, a marital asset. His neglect of the ex-wife's Corvette resulted in it's damage and loss of value. He has provided automobiles that do not work and has not adequately taken responsibility for agreed to repairs to the home.

The husband has an interest in the business, three IRA's, a Corvette, and a vested pension plan. The Debtor's personal transportation and entertainment expenses were being paid by the business. His living expenses are shared by his girlfriend. All these matters were taken into consideration by the trial court in making its findings on alimony and support.

■ This Court, after reviewing the motions, transcripts, the judgment, its amendments, other orders, the record in this case, and considering the factors suggested by *In re Hixson, supra,* finds the following items awarded in the state court final judgment to be in the nature of support, and therefore, nondischargeable:

A. The transfer of the marital home to the ex-wife;

B. The hold harmless requirement regarding the pending litigation concerning the hot water heater. The Debtor must indemnify and hold harmless the ex-wife to the extent she makes any payments regarding the obligation and the litigation concerning the heater. If the ex-wife must enforce the hold · harmless agreement against the Debtor or if the ex-wife is threatened by judgment, levy, or execution regarding the litigation, then any expenses incurred in enforcing the hold harmless agreement are likewise nondischargeable. Nondischargeability is determined notwithstanding that the Debtor may be discharged from the obligation associated with the solar hot water heater. *MacDonald, supra.*

C. The award of attorney's fees in the state court's order dated November 25, 1986 is nondischargeable. Such a finding is consistent with this Court's ruling in *Heverly, supra.* Similarly, the expert witness fees for Edward Leonard and Barry Eisenberg imposed upon the Debtor is determined to be nondischargeable. *Heverly, supra* at 23.

As to the equitable distribution, the accompanying lump sum alimony and the requirement to secure the same with the maintenance of a life insurance policy, questions of fact remain. The language in the state court final judgment and subsequent orders suggests two possible alternatives, i.e. support or property settlement. Specifically, the state court awarded $1,200 periodic alimony and the additional lump-sum alimony. The former is admitted to be in the nature of support. This Court cannot determine from the documents before it the intent of the state court judge as to the latter.

As to the award reimbursing the ex-wife for moneys paid to Dr. Ritt, the state court record does not disclose what service was performed by Dr. Ritt nor what payment to Dr. Ritt was considered by the state court.

It will be necessary to review the trial record which is presently not available to the court and which may be stipulated to at a final evidentiary hearing. If the equitable distribution/lump-sum alimony and the life insurance policy is determined to be in the nature of support and therefore nondischargeable, the matter is resolved. If the equitable distribution/lump-sum alimony and life insurance policy is determined to be not in the nature of support or in the nature of a property settlement, the issue remains as to how this particular claim of the ex-spouse will be handled in this Chapter 11 case. A quick review of the file indicates the final judgment of dissolution has been recorded and therefore would be a lien on all real property of the Debtor. Fla.Stat. § 55.10; *Steinbrecher v. Cannon*, 501 So.2d 659 (Fla. 1st DCA 1987); *In re Kolany*, 49 B.R. 781 (Bankr.S.D.Fla.1985). If a writ of execution was delivered to the sheriff in the county where the personal property is located, then a lien may have attached to the personal property of the Debtor. *Accent Realty of Jacksonville, Inc. v. Crudele*, 496 So.2d 158 (Fla. 3rd DCA 1986). In that regard, there may be questions associated with valuing the collateral, classifying the debt in the Chapter 11 plan, and ultimately questions associated with acceptance of the plan and possibly cramdown of the ex-wife's secured or unsecured claims.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED the Debtor's Motion for Summary Judgment is hereby denied. It is further

ORDERED, ADJUDGED AND DECREED the Defendant, Carol A. Burch's Motion for Summary Judgment is hereby granted in part and denied in part. Those items of alimony and support in paragraph 10 of Debtor's complaint, the transfer of the marital home to the ex-wife, Carol A. Burch, her attorney's fees, expert witness fees, and the hold harmless requirement regarding the solar hot water heater litigation are hereby deemed to be nondischargeable as set forth in this opinion. It is further

ORDERED, ADJUDGED AND DECREED that this Court by separate order shall set a final evidentiary hearing to consider the dischargeability of the debt characterized as equitable distribution/lump-sum alimony, the accompanying security in the form of a life insurance policy, and any claim for reimbursement of payments to Dr. Ritt.

DONE AND ORDERED.